# THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

## A-075-555-747

### HENRY PRATT AND OTHER INMATES-DETAINEES,

### PLAINTIFF.
### VS.

### ATTORNEY GENERAL OF THE UNITED STATES-DOJ, DEPARTMENT OF HOMELAND SECURITY AND IMMIGRATION CUSTOM ENFORCEMENT;

### EMBASSY OF LIBERIA, WASHINGTON, DC USA;

### YORK COUNTY PRISON;

### DEFENDANTS.

## JURISDICTION

Pro se Plaintiff Henry Pratt and others Inmates and Detainees similarly situated, is at all times herein mentioned is an ICE Detainee and other ICE-Detainees and Inmates, currently incarcerated at Clinton County Correctional Facility, McElhattan, Pennsylvania filed this "Civil Action Pursuant" to 42 U.S.C. § 1983 against the above Defendants regarding events that occurred during, incarceration at York County Prison-Clinton County Correctional Facility, McElhattan, Pennsylvania within their Jurisdiction and District of the Middle District of Pennsylvania.

## CIVIL LAWSUIT AND COMPLAINTS

1)  In the past several years the Liberian Embassy has "Issued Travel Documents to ICE" for deportation without no regards to the Liberian People, with serious life threatening medical conditions, that lived in the United States such as case at hand. Mr. Henry Pratt Alien number 075 555 747 who have life threatening medical conditions, such as "diabetes", "high blood pressure", "nerves damages" and other "serious medical concerns". The Liberian Embassy and Government knows very well that these medical treatments and medications are not available in Liberia, but yet, they go ahead and accept Liberians detainees to be deported to, suffer torture, harm, for not having and unable to pay for medical treatments or medications, leaving "other ICE detainees and Liberian ICE detainees", to died in Liberia without the basis medical cares.

2)  The Liberian Embassy has refused to "Implement Rules" similar to other Embassies, such as Embassy of Jamaica, who first obtain information from Immigration and Custom Enforcement (ICE) about their Citizens medical conditions of their ICE detainee, and first obtain information whether such medical treatments are available in the country "Jamaica" to be deported before issuing travel documents for their citizens to be deported. Lot of Liberians detainees has **DIE** in Liberia, for these **evil reason** by the *Liberian Embassy, the Liberian Government, DOJ, DHS, ICE, USCIS* and the United States Government, knowing very well that these detainees medications and treatments are not available in Liberia. These medical concerns needs the Courts and United Nation attentions.

3)  The Liberian Embassy has sent a lot of Liberians, to be "torture or harm", to their **death beds**, haven no regards for their life threatening medical conditions, and refused to listen to their citizens when they complaint about their "health issues". Since March 23, 2018, over a year now, Mr. Pratt had told the Liberian Embassy about his life threatening medical concerns, which had been mentioned

2

above. The Liberian Embassy has refused to intervene with the Department of Homeland Security in addressing Mr. Pratt medical concerns.

**4)** On March 23, 2018, Mr. Pratt wrote a Sworn Affidavit to the Liberian Embassy in Washington DC with the Caption *Reference: "RE: TO THE COUNSEL, LIBERIA EMBASSY",* which this sworn affidavit was notarized by the York County notary: *"Derek R. Trone",* explaining Mr. Pratt's medical conditions. A copy of this letter was also followed to the Assistant Chief Counsel of DHS/ICE: 3400 Concord Road, York Pa 17402. Upon discussing Mr. Pratt's medical conditions and raising Mr. Pratt's serious medical concerns of life threatening medical conditions to the Liberian Embassy, DHS-ICE, Mr. Pratt have yet to hear from, DHS/ICE and the Liberian Embassy, in regards to the Affidavit that were sent to them. **EXHIBIT-A. Sworn Affidavit.**

**5)** Petitioner, (Mr. Pratt's), is a 49 years old male who suffers from the following "Life Threatening"medical conditions. **A.** Diabetes, seriously affecting Petitioner's eye sight. it keeps getting worse and worse. **B.** High Blood Pressure, 150 to 107 sometime and High Cholesterol Level **C.** Post Trauma Syndrome Disorder (PTSD) as re of experiencing the Killing of Petitioner Entire family. **D.** Post Trauma Syndrome Amnesia (PTSA), sometimes causing memory loss and nightmare from the Killing of Petitioner's entire family **E. Nerve Damage and F.** Other Medical conditions.

Other Liberians who are harmed by the Liberian Embassy, DHS-ICE, will be sending, evidences, sworn affidavits, medical report and etc, from Liberia and the U.S., in support of this civil lawsuit. Liberia is part of the United Nations treaty and should obey these humanitarian concern, should be held responsible when they violates humans lives for **political games and money, to enrich the Liberian Government officials**, by not listening to their citizens and the Liberians peoples and leaving us to die and suffered. Mr. Pratt medical report can be obtained by the Clinton County Correctional Facility and the York County Prison.

6)   Mr. Pratt medical life threatening conditions has been neglected by DHS, DOJ, ICE, USCIS and York County Prison. On or around November 2019, Mr. Pratt was brought to an outside hospital of the Clinton County Facility to see a Doctor McCoy at" Encompass Health at Belantefante, Pennsylvania", about Mr. Pratt's troubling nerve conditions. After the test, Doctor McCoy told the two Clinton County Officers and Mr. Pratt that his two arms are weakened, because Mr. Pratt's have nerves damages, and he also has nerves damages, in the back of Mr. Pratt's neck, the Doctor also stated that: "Mr. Pratt in fact has serious nerves damages and needed medical tests, medication and also needed to see other Doctors for various testings. **EXHIBIT-B. Medical Tests By The Doctor McCoy.**

7)   Mr. Pratt cannot pull on the jumper given to him in detention and need assistant from other Inmates and Detainees pulling on his jumper at the detention Facility, to wear on a daily basis at the ICE\DHS detention facility at CCCF, because of the weakening of Mr. Pratt's two shoulders. Mr. Pratt was wounded on his left hand, from the Civil War in Liberia, when Mr. Pratt's entire family got killed. Mr. Pratt got shot on his right hand in the United States. Mr. Pratt was also push by the "Correctional Officers in York County Prison" after Mr. Pratt told the officers to stop beating another Detainee, who was in a wheel chair. After Mr. Pratt was pushed by these York County Prison Correctional Officers, Mr. Pratt started to feel severe pain and weaknesses in his arms which may trigger the resulting in his nerves damages AND the weakening of his arms..

8)   On December 16, 2019 Mr. Pratt was again taken outside of the Clinton County facility to see the Doctor referred by Doctor McCoy on the previous visit. When Mr. Pratt arrive at the hospital, this time at the University of Pittsburgh Medical Center (UPMC), the Doctor at (UPMC), the hospital told Mr. Pratt that only an X ray or MRI will be done on Mr. Pratt's left shoulder and his neck. Mr. Pratt complaint and told the Doctor at (UPMC), that Doctor McCoy recommended that Mr. Pratt have problem with his two shoulders and question why is only one of his shoulder is being look at for testing

during the December 16, 2019 visit to the UPMC. The Doctor told Mr. Pratt and the transporting Officers that "DHS-ICE", had only referred that the 12/16/2019, visit was only to look at one shoulder instead of the two shoulders as directed by Doctor.

# Due Process Clause of the Fifth Amendment of the U.S. Constitution

Petitioner (Mr. Pratt)-Inmates-Detainees are violated of the AMERICAN DISABILITIES ACT:

**9)** To establish a violation of either the ADA or Rehabilitation Act, plaintiff must show that:

(A) she/he are qualified individuals with a disability,

(B) she was discriminated against, excluded from participation in, or denied the benefits of a public entity's services, programs, or activities; and

(C) the discrimination, exclusion, or denial of benefits was because of her disability. Americans with Disabilities Act of 1990, § 202, 42 U.S.C.A. § 12132; Rehabilitation Act of 1973, § 504(a), 29 U.S.C.A. § 794(a).

The Deportment of Justice/DHS, ICE, USCIS, York Couny Prison, Liberian Embassy and all the **DEFENDANTS,** has denied Mr. Pratt and other Petitioner(s) in York County Prison of the **AMERICAN DISABILITIES ACT,** by refusing to attend to "OUR" medical needs such as medications, good healthy food and etc.

United States Code Annotated Title 42. The Public Health and Welfare Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos) Effective: January 1, 2009 42 U.S.C.A. § 12101 § 12101. Findings and purpose:

## (a) Findings

The Congress finds that--

**(A)** physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

**(B)** historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; **(C)** discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

**(D)** unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

**(E)** individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

**(F)** census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

**(G)** the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(H) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non productivity.

## (b) Purpose

It is the purpose of this chapter--

**(a)** to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

**(b)** to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

**(c)** to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

**(d)** to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

**10) Mr. Pratt has demonstrated that the DEFENDANTS has discriminated against ("US") as stated in this Civil Lawsuit. The Liberian Embassy has also issued traveling documents to DOJ-DHS-ICE, without an interview with the individual to know if he/she is a citizens or not.**

### Fourteenth Amendment

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiffs allege that the actions of the Defendants

violated the substantive due process clause by depriving L.M. of her liberty interest in bodily integrity in the tattoo incident (Count I) and by depriving Barron of her right to parental care, custody and control with respect to the hospital incident (Count III). They further allege that Defendants demonstrated reckless indifference to L.M.'s rights in the tattoo incident (Count II) and that the School District is liable for its official policies which injured both L.M. and Barron (Count IV)

# FACTUAL ORDER (CHRONOLOGICALLY)

**11)**   During the civil war in Liberia Mr. Pratt entire family was killed and Mr. Pratt was wonded on his left arm by a granade attact. Mr. Pratt was the only survivor. Mr. Pratt came to the United States in 1997 and was granted aslyum from the authoriticities of the civil war in Liberia. The same peoples that killed Mr. Pratt's entire fmaily are part of the current administration of President George Weah, such as, Charles Taylor ex-wife, Charles Bright, and others.

**12)**   The liberian Embassy has refuced to look into Mr. Pratt's asylum claim and the fear he faces if returned to Liberia, and also the Serious Medical Conditions which are life threatening. The Liberian Embassy has refused to impliment the Rules and Regulation like other Countries, such as Jamaica, when its **Citizens Escapes Fear and Is Granted Asylumn in the Uinited State Or Other Countries**, they will first discover ("Whether") or not it is **Safe** for the individuals to return. Which is in this case, the Liberian Embassy have refused to conduct a proper investigation into the safe return of Mr. Pratt. However, they have abhorrently sided with ICE in forcing the return of individuals to then face persicution and likely death, lacking complete regard of the Treaty of the United Nations.

**13)**   Mr. Pratt has serious medical concerns which he has repeteadely inquired through calls and written communication to the Liberian Embassy to address his medical concerns, treatments and medications. They have refused to comply with hs request where the Liberian Government and the Government of the United States failure to inquire as to whether the medication required by Mr. Pratt is available in Liberia. Mr. Pratt medications needed are

1. For Diabetes;

2. High Blood Pressure;

3. High Colesteral;

4. Nightmares;

5. PTSD;

6. PTSA;

7. Muscle Pains;

8. Nerve Damage, and other medical conditions.

**14)**   Accordingly, these medications are not available in Liberia, and the Liberian Government is not able to afford the cost of these medications as the country is in a financial deficit and cannot take care of its citizens currently. Mr. Pratt has explaied this to DHS and the Liberian Embassy to where they have refused to take heed or consideration the danger in which Mr. Pratt faces should these medications not be given ot him in a timely manner.

**15)**   Only recently a detainee was ill from diabetes in the United States whose departure was forced by ICE and was decieved in given limited and insufficient medication for only one month where upon his arrival in Iraq with lack of suffcient medication, he passed away as his medication was not available in his counrty, or he was unable to afford such medications. The liberian embassy should learn from this lession as the issue is the same should Mr. Pratt was to be removed as he would also face death.

16)   Mr. Pratt removal proceeding was **flawed** as the evidence to prove a convistion by DHS is not substantial. Mr. Pratt was not advised to the porential Immigration Consequence. See *Padella v. Kentucky*. And, also matters of *Lazada*. **Exhibit H.** Plea Trancrispt.

The Immigration Court and the Federal Courts has abused the Rules of law and descression by refusing to accept that Mr. Pratt must be informed about Immigration Consequence.

The Judgement of Sentence is missing the Plea Colqually is missing Time Stamp. **Exhibit C.**

The Sentencing Sheets in which DHS has furnished as evidence to prove a convistion is illegal and is missing Time Stamp. See *Pennsylvania rule 576- rule 114, and rule 1921*.

17)   Mr. Pratt is a very sick man and is constantly in need of medical care. The Department of Homeland Security and the Immigration and Custom Enforcement have refused to address Mr. Pratt's medical concern leaving him exteremly ill in prosion.

18)   On February 13th, 2017 Mr. Pratt was detained by ICE, and while in detention for one week in York County Prison, about ten to fifteen Officers were beating an immigrant from **Zaire,** who was confined to a wheel chair. Mr. Pratt informed the officer to decist on abusing the immigrant as he was bleeding profusely from his face and body to where the offices **responded by grabbibng Mr. Pratt slamming him into his Cell to where he sustained traumatic arm injuiries.**

Sicne then, Mr. Pratt has not been able to dress himself, and his arm has become weaker causing him as a handicap that he cannot do mush using his hands and also his neck. These issues was <u>caused</u> by the York County Officer which was hired by the Department of Homeland Security to take care of Mr. Pratt. The York County Officers abused Mr. Pratt and wonded him leaving him to be a handicap.

19)   While in York County Mr. Pratt made several complaints to DHS-ICE, Liberia Embassy and the York County Prison that he was unable to put his jumpsuite on and his hands was getting weaker and also have damage in his neck. It took the Defendants almost a year to take Mr. Pratt to see any Doctor.

**20)**   After Mr. Pratt saw the Doctor, He deliberately falsely stated that there was not any damage whch Mr. Pratt continue to feel pain and weakness in his arm and his neck. Mr. Pratt did file a lawsuit against DHS and York County Prison which is pending at this moment. Mr. Pratt was removed from York County Prison because of the pending lawsuit he has against the Prison to Clinton County Correctional Facility.

**21)**   Mr. Pratt was transferred to Clinton County in May of 2019. Upon arriving in Clintion County Facility Mr. Pratt complained to the Doctors in the facility that his arm was weak and needed mendical attention. The facility took Mr. Pratt to see Dr. McCoy at Encompass Health. After the examination Dr. McCoy did discovered muscle and nerver damage in both arms and neck of Mr. Pratt. **Exhibit B**. Medical Report from Dr. McCoy.

**22)**   Dr. McCoy did refer Mr. Pratt to the University of Pittsburgh Meidcal Center to conduct an MRI ( X-ray) on both shoulders. DHS-ICE refused to inform the hospital to address both Mr. Pratts shoulders, but instead was allowd to only address one of Mr. Pratts shoulder. Sicne the X-Ray was done by the University of Pittsburgh Meidcal Center Mr. Pratt have complained to DHS-ICE to review the result, to which was refused.

**23)**   On January 20, 2020 Mr. Pratt was take to Giesinger Hospital in Danville, PA which was referred by Dr. McCoy to observe both shoulders, neck, muscle damane and nerver problems of Mr. Pratt. Wheh Mr. Pratt arrived at the hospital he faced another **charade** by the DHS-ICE as they did not send the medical records that was conducted by Dr. McCoy to Giesinger Hospital. Hence, a <u>Dr. Marrisa</u> opined that she would have made contact with the prison facility and Dr. McCoy to see if the recored could be attained. The record request was refused and not sent.

**24)**   After being at the hospital for over an hour awaiting the records **Dr. Marrisa** from Giesinger Hospital informed the Clinton County Officer that accompanied Mr. Pratt that she had to reschedule the

appointment for three months (90 days) ahead. Now, **DHS-ICE is attempting to remove Mr. Pratt without his medical care while still inquired.** The injury that was caused was as a result of the DHS-ICE and York County Prison leaving Mr. Pratt with nerve damage and severely torn muscles.

**25)** The Liberian Emabassy is under the obligation to enforce descipline and should refrain from any "scams" involving a Quid Pro Quo. There have been a long understanding that the Liberian Embassy have sent a lot of its citizens to their **death bed** because of a Quid Pro Quo with DHS-ICE. Mr. Pratt was granted asylum as he faces fear of past and present persecution. The Liberian Embassy has refused to address Mr. Pratt's fear he faces should he be removed from the United States. This is a Humaniterian issue of concern.

**26)** Mr. Pratt was violated by the Department of Homeland Security in detention since 2017 and was not given appropiate time at the facility's "Law Library" as He is doing his cases *Pro Se* in defending himself. He was also abused by DHS-ICE by refusing to being able to input a given number of contacts on his telephone **call list**. Should Mr. Pratt be allowed to add more contact numbers, he would then be able to acquire a Pro Bon Attonrys to assist him wiht his cases. This is a vioation of Mr. Pratt's due process of the Fifth Ammendment. According to Federal Rules that an inmate or detainee is allowed thrity (30) numbers on a contact call list. However, in a DHS detention in Clinton County Correctional Facility, detainees are only limited to ten numbers; which is wrong.

**27)** Mr. Pratt has been denied relief up to this point because DHS-ICE has denied him sufficent time with use of the Law Library, and have refused to allow him to adding contact information of attorneys on his call list, leaving him with no opptions. Mr. Pratt complained about this situation to the Third Circuit Court of Appeals, Docket number 19-2034 which there was ten inmates and detainees who signed an affidavit supporting Mr. Pratts claims about the Law Library. The Court of Appeals played a deaf ear to the arguments of Mr. Pratt leaving him to be denied all of his reliefs.

It is on the records if Mr. Pratt, is harm or die in Liberia because he did not get the medical cares and attention in the United States, the Liberian Government and the United States Government will be held responsible. If Mr. Pratt is harmed, tortured or killed of the same fear that he was granted asylum in the U.S. - peoples that killed his family, WHICH some of them is part of this new Government in Liberia, the Liberian Embassy and the United States Government are responsible.

## DAMAGES

**28)** The damages occurred is widespread total $100 million and to deter the Defendants from future such actions. The Defendants are liable because they did not acted accordingly and doing the things alleged in the above mentioned.

The Liberian Embassy abused their Citizens and leave them to died from life threatening conditions in the above mentioned. It is understood that the Liberian Embassy have accepted money from ICE\DHS to issue travel document without any regards to address their Citizens medical concerns.

Damages incurred by the Liberian Embassy total $50 million;

Damages incurred by DOJ-DHS/ICE total $25 million;

Damages incurred by York County Prison $25 million;

Date: January 24, 2020     Respectfully Submitted: _____

A#- 075 555 747
**Henry PRATT # 10000-4669**
Clinton County Correctional Facility
MCELHATTAN, PA 17748

# CERTIFICATE OF SERVICE

I, HEREBY CERTIFY that I have sent the original copy of this lawsuit date below, to the Clerk of Court of the United States District Court, on Date: January 24, 2020 via United States Postal Service, U.S.P.S. citified mail. Additionally, I have caused a copy of this lawsuit to be served on the Respondents on the same date and via United States Postal Service, U.S.P.S. First Class mail to the Address and date specified bellow.

To.

T. BENTON YORK

TRIAL ATTORNEY
OFFICE OF IMMIGRATION LITIGATION
U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION
P.O. BOX 868, BEN FRANKLIN STATION
WASHINGTON, DC 20044
(202) 598-6073
ATTORNEY FOR APPELLEE

EMBASSY OF LIBERIA, WASHINGTON, DC USA
5201 16 ST NW WASHINGTON, DC 20011

YORK COUNTY PRISON-BOARD
3400 CONCORD ROAD
YORK, PA 17402

Date: January 24, 2020          Respectfully Submitted:_____

A#- 075 555 747
Henry PRATT # 10000-4669
Clinton County Correctional Facility
58 Pine Mountain Road
MCELHATTAN, PA 17748

I certify that this document was given to the prison officials on Date: January 24, 2020 for forwarding to the United States Court of Appeals (Third Circuit). I certify under under penalty of perjury that the foregoing is true and correct so help me God.

Sign _____

